IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BLET GCA UP Central Region, et al., | ) | |
|     Plaintiffs, | ) | |
| | ) | No. 20 C 1105 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| Union Pacific Railroad Company, | ) | |
|     Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Defendant's motion to dismiss [7] is granted. This case and the related case (No. 20 C 1115) are dismissed for lack of subject-matter jurisdiction. Both cases are terminated.

**STATEMENT**

Plaintiffs, unions representing locomotive engineers, sued Union Pacific Railroad Company ("UPRC") when it made changes to its attendance policy, alleging that the changes constitute "work rules," about which UPRC was required to bargain. UPRC moves to dismiss the complaint, contending that, under the Railway Labor Act, 45 U.S.C. § 153 (the "Act"), Plaintiffs' claim is a minor dispute over which the Court lacks jurisdiction.

As the Seventh Circuit has explained, "any change to pay, rules, or conditions must be authorized by contract or as the result of bargaining." *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 879 F.3d 754, 757 (7th Cir. 2017). The Seventh Circuit further explains that

> [e]mbedded in the Act is a strong preference for arbitration, as opposed to judicial resolution of disputes. If a disagreement arises over the formation or amendment of a collective bargaining agreement (CBA), it is considered a "major" dispute under the Act, and it must be decided by a court. If, on the other hand, it relates only to the interpretation or application of an existing agreement, it is labeled "minor" and must go to arbitration.
>
> . . .
>
> The burden on a railroad to convince the court that its changes are only an interpretation or application of an existing CBA is quite low. If the railroad can articulate an argument that is "neither obviously insubstantial or frivolous, nor made in bad faith," the court lacks jurisdiction to do anything but dismiss the case and allow arbitration to go forward.

*Id*. at 755-56.

As noted, "[t]o determine whether the dispute in this case is a major or minor dispute, this court must refer to the parties' existing collective bargaining agreement." *Ry. Labor Executives Ass'n v. Norfolk & W. Ry. Co.*, 833 F.2d 700, 705 (7th Cir. 1987). Importantly, "the parties' collective agreement . . . includes both the specific terms set forth in the written agreement and any well[-]established practices that constitute a 'course of dealing' between the carrier and employees." *Id*. In *Railway Labor Executives*, the Seventh Circuit considered whether the railroad's imposition of a drug-screen test as part of a urinalysis was a minor dispute that was subject to arbitration. In holding that it was, the Seventh Circuit reasoned as follows:

> We . . . hold that the drug screen urinalysis, unilaterally imposed by N & W as part of all employee medical examinations, is a minor dispute. We cannot say that N & W's reliance on the parties' agreement for authorization of its drug testing program is "frivolous" or "obviously insubstantial." The parties' past practice has been to accord N & W unilateral authority to determine the appropriate tests to conduct during required medical examinations. The addition of a drug screen as a second component of the urinalysis previously required of all employees does not constitute such a drastic change in the nature of the employees' routine medical examination or the parties' past practices that it cannot arguably be justified by reference to the parties' agreement.

*Id.* at 706 (internal citation omitted).

Applying this approach, the Court finds that UPRC's revision of its attendance policy is a minor dispute. With its motion to dismiss, UPRC submitted the affidavit of Brant Hanquist, UPRC's General Director of Labor Relations, who attests that UPRC's system-wide attendance policy was unilaterally adopted in 1998 and was not negotiated with any labor union.[1] (Def.'s Mem. Supp. Mot. Dismiss, Ex. 1, Hanquist Decl., Dkt. # 8-1, ¶ 9.) Hanquist further states that UPRC also unilaterally modified its attendance in February 1999, January 2004, and November 2006. (*Id.* ¶¶ 10-12.)

As a result of the 2006 modification, one of the same plaintiffs in this case, the BLET General Committee Adjustment for the Central Division, among others, sued, claiming that the action violated the FMLA and was a repudiation of the parties' 1952 Laying Off and Leave of Absence Agreement. UPRC moved to dismiss the claim, asserting that the because the plaintiffs' claim dealt with an issue of contract interpretation, it was a minor dispute, which had to be arbitrated. The court agreed, stating as follows:

> In order for plaintiffs to proceed on their claim that the . . . [new] Attendance Policy eradicates their right to layoff under the 1952 Agreement, the court must first be able to determine what right to layoff the 1952 Agreement provides the

---

[1] "To determine whether subject matter jurisdiction exists, a court may look past the complaint to any pertinent evidence." *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 376 (7th Cir. 2019).

2

> plaintiff engineers. This is an issue of contract interpretation and is subject to mandatory arbitration unless Union Pacific's proffered interpretation of the 1952 Agreement is frivolous, or not arguably justified.

(*Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, No. 07 C 160 (N.D. Ill.), 6/17/07 Order, Dkt. # 37, at 2-3.) Finding UPRC's position arguably justified and not frivolous, the court stayed the claim pending arbitration. (*Id*. at 3.)

UPRC subsequently made additional unilateral modifications or updates to the attendance policy in January 2011, September 2015, May 2017, and January 2018. (Def.'s Mem. Supp. Mot. Dismiss, Ex. 1, Hanquist Decl., Dkt. # 8-1, ¶¶ 15-18.) The history of UPRC's unilateral modifications without negotiation provides a basis for it to assert that its course of dealing with Plaintiffs allowed it to make the most recent modification; UPRC's position is arguably justified and not frivolous. *See Ry. Labor Executives,* 833 F.2d at 706 ("The parties' past practice has been to accord N & W unilateral authority to determine the appropriate tests to conduct during required medical examinations. The addition of a drug screen as a second component of the urinalysis previously required of all employees does not constitute such a drastic change in the . . . parties' past practices that it cannot arguably be justified by reference to the parties' agreement."). Plaintiffs' challenge to the 2020 attendance-policy modification is thus a minor dispute that the Court must send to arbitration.

Plaintiffs' argument that there is no contract to interpret is unavailing. As Plaintiffs acknowledge, "the relevant terms of an agreement are not only those that are written down; they also include the parties' practice, usage, and custom as they carry out their agreement." *Bhd. of Locomotive Eng'rs & Trainmen*, 879 F.3d at 758. In a similar challenge to drug-testing rules promulgated by a railroad, the Supreme Court noted that "[i]n the past, the parties have left the establishment and enforcement of medical standards in Conrail's hands." *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 317 (1989) ("Conrail"). Looking at Conrail's historical practice of treating drug tests as a medical concern, the Supreme Court concluded that "Conrail's interpretation of the range of its discretion as extending to drug testing is supported by the general breadth of its freedom of action in the past, and by its practice of including drug testing within routine medical examinations in some circumstances." *Id.* Accordingly, the Supreme Court concluded that because "Conrail's contractual arguments are not obviously insubstantial, we hold that the case before us constitutes a minor dispute that is within the exclusive jurisdiction of the Board." *Id*. at 320.[2]

---

[2] In so finding, the Supreme Court stated as follows:

> We go no further than to hold that Conrail has met the light burden of persuading this Court that its drug-testing practice is arguably justified by the implied terms of its collective-bargaining agreement. We do not seek to minimize any force in the Union's arguments that the discretion afforded Conrail by the parties' implied agreement, as interpreted in light of past practice, cannot be understood to extend this far.

*Conrail*, 491 U.S. 320.

      The Court finds that under the same analysis, UPRC's contention that it can unilaterally alter the attendance policy is arguably justified and not frivolous. This case and the related case (No. 20 C 1115) are dismissed for lack of subject-matter jurisdiction.

**Date:** June 2, 2020

*/s/ Ronald A. Guzmán*

**Ronald A. Guzmán**
**United States District Judge**